Steven BUSSA, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (Giles & Ransome,
Inc. and National Union Fire Ins.
Co.), Respondents.

Commonwealth Court of Pennsylvania.

Submitted Sept. 15, 2000.
Decided May 23, 2001.
Reconsideration En Banc
Denied Aug. 3, 2001.

Cheryl A. Furey, Philadelphia, for petitioner.

Wendy L. Slear, Philadelphia, for respondent.

Before PELLEGRINI, Judge and FLAHERTY, Judge, JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Steven Bussa (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the order of a Workers' Compensation Judge (WCJ) granting the Modification Petition filed by Giles and Ransome, Inc. (Employer). The WCJ granted the Modification Petition based on Claimant's lack of good faith in rejecting a job offer by Employer that would have allowed Claimant to work from his home. We reverse.

Pursuant to a Notice of Compensation Payable, Claimant began receiving benefits for a lumbosacral strain that occurred on February 4, 1991. On November 2, 1992, Employer filed a Modification Petition asserting that, as of August 12, 1992, Claimant is capable of performing a light-duty job for twenty hours per week. Claimant filed an Answer denying that he is capable of performing light-duty work.

At the hearings before the WCJ, Employer presented the testimony of Michael Barnasevitch, who is the risk management coordinator for Employer. He testified that, in a letter dated July 9, 1992, Claimant was offered a job as an equipment maintenance/cost coordinator at Employer's Bensalem facility for twenty hours per week. Claimant accepted this job and began working on July 13, 1992. Claimant worked sporadically for three weeks and then informed employer that he could no longer continue to work because of his work injury. Mr. Barnasevitch stated that Claimant informed him that "the activities of daily getting up and getting to work ... [were] really aggravating the back condition and he was having a lot of pain." (N.T. 2/10/94, p. 11). Thereafter, Claimant and Employer entered into a Supplemental Agreement indicating that, on August 3, 1992, Claimant was again totally disabled as a result of his work injury.

On August 12, 1992, Employer sent Claimant a letter offering him this same job and informing him that he could perform his job duties from home. The letter also stated that "[a]s per our discussion, you will begin with a flexible work schedule and a tentative target of 20 hours per week." Mr. Barnasevich explained that Claimant could connect to Employer's computer network anytime between 7:00 AM and 6:30 PM Monday through Friday to perform this job. If Claimant discovered a problem that needed to be addressed immediately, Claimant could call Employer on the telephone between 8:00 AM and

5:00 PM Monday through Friday. Mr. Barnasevitch also testified that, because Claimant already owned a personal computer, the only extra equipment that would be required to enable Claimant to work from home would be a modem and another phone line. On August 26, 1992, Claimant sent Mr. Barnasevitch a letter stating that "I would like to thank you for the offer, unfortunately I can not accept it because of my health and living limitations." Claimant also told Mr. Barnasevitch that his wife was concerned about their home being turned into an office.

On October 21, 1992, Claimant received another letter offering him the work-at-home job again because Herbert Stein, M.D. felt Claimant's condition had improved enough to allow him to work. Claimant accepted this job. The additional phone line was installed and Employer's director of computer services visited Claimant's home to determine the type of software that would be needed to allow Claimant's computer to connect to Employer's computer network. Before the proper software could be installed, however, Claimant decided to decline this job offer.

Employer also presented the deposition testimony of Dr. Stein, a board certified orthopedic surgeon who began treating Claimant on February 6, 1991. Dr. Stein testified that he reviewed several job descriptions, including that of the equipment maintenance/cost coordinator position, and authored a letter dated April 24, 1992 stating that Claimant "could give it a try, particularly if he can start on a low number of hours and gradually, depending on how he tolerates them, increase the number of hours. I would recommended having him start at three to four hours maximum. The whole situation will depend on his ability to change his position ad-lib, moving from sitting to standing to walk-ing." With regard to the work-at-home equipment maintenance/cost coordinator position, Dr. Stein testified that he reviewed the description of that job and indicated on a form dated September 21, 1992 that this was a job that Claimant was capable of performing. Dr. Stein further testified that, as long as the restrictions outlined in the April 24, 1992 letter are adhered to, Claimant can perform the work-at-home position. When asked about Claimant's use of Percocet, Dr. Stein testified that he dictated a note after his July 26, 1993 examination of Claimant in which he wrote that Claimant "could possibly tolerate a 3–4 hour workday at home where he could periodically get off his feet and lie down. He is on medication that may make it more difficult for him to do this mental work, but perhaps being at home and able to lie down could decrease the amount of painkiller. That would be worth a try." (Dep. of Dr. Stein, 11/17/93, Exhibit P–2).

Employer also presented the deposition testimony of Frederick Murtagh, M.D., a board certified neurologist who examined Claimant on July 18, 1991 and May 19, 1992. During his deposition testimony, Dr. Murtagh was presented with the description of several jobs, including the equipment maintenance/cost coordinator position that Claimant attempted to perform at Employer's Bensalem facility. (Dep. of Dr. Murtagh, Exhibits 2, 3 and 4). He testified that he reviewed these descriptions during the May 19, 1992 examination and determined that Claimant could perform these jobs. With regard to Claimant's use of Percocet, Dr. Murtagh recommended that Claimant should take a mild anti-inflammatory medication for his pain rather than Percocet because Percocet is a narcotic and "would definitely affect his thinking." (Dep. of Dr. Murtagh, 3/04/93, p. 16). Claimant testified that he takes as many as three Percocets a day for

the treatment of his pain in addition to Valium, Elavil and Benadryl. He stated that the Percocet "sort of changes your mind somewhat. You can read ... and after the first few words you realize that your mind just did not register what you read. And you have to start all over again." (N.T. 2/16/94, p. 23).

With regard to his ability to work from home, Claimant testified that the size of his apartment is 528 square feet. He also testified as to numerous photographs of his apartment that were submitted into evidence. Several of these pictures show that Claimant has a computer in his bedroom. Claimant stated that:

> The computer terminal, itself, the screen is on top of an entertainment center or rack system, which was not designed for this purpose. The central processing unit is laying in or sitting on its edge next to this area. And there's only 28 inches of space between the front of the entertainment center and the bed ... [which] you can walk through, but you can't sit ... you have to [put] a chair sideways and angle it at about a 45 degree angle. And you have to turn the upper part of your, your torso, towards the keyboard, or put the keyboard in your lap which is very uncomfortable.

Claimant also stated that there is no other place in his apartment where he could locate this computer. (N.T. 2/16/94, pp. 30–34). Claimant also stated that his wife was sick and bedridden for several months and expressed concern over performing the offered job at home for this reason (N.T. 5/11/94, p. 8). Claimant also testified that he has never attempted to perform the work-at-home position.

By decision and order dated July 1, 1998, the WCJ accepted the testimony of Mr. Barnasevitch, Dr. Stein and Dr. Murtagh as credible and rejected the testimony of Claimant as not credible. The WCJ found that, although Claimant does still suffer from his work injury, he did not exercise good faith when he declined the work-at-home position offered by Employer on August 12, 1992. Accordingly, the WCJ granted Employer's Modification Petition as of August 12, 1992. Claimant appealed to the Board, which affirmed the order of the WCJ. This appeal followed.[1]

Claimant argues that the decision of the WCJ is not supported by substantial evidence and that the WCJ erred as a matter of law because: 1) the offered position was not available; 2) Employer did not submit any evidence of a change in Claimant's condition; 3) the work-at-home position was not specifically approved prior to the time it was offered to Claimant on August 12, 1992; and 4) offering Claimant a job that would require him to work from his home violates his constitutional rights under the Fourteenth Amendment to the United States Constitution and Article 1, Sections 1 and 26 of the Pennsylvania Constitution.

Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa.Cmwlth.1998). In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder. *Id.* Moreover, we are to draw all reasonable inferences

---

1. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek )*, 537 Pa. 32, 640 A.2d 1266 (1994).

which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party. *Id.* Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Id.* It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* It is with these principles in mind that we consider this challenge.

Pursuant to *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), the burden of proof is on the employer to show that the claimant's condition has changed and that the claimant has been referred to a then available job that he is capable of performing. The burden of proof then shifts to the claimant to demonstrate that he responded to the job offer in good faith. If the claimant does not exercise good faith, then his benefits can be modified. *Id.* at 252, 532 A.2d at 379.

Under the second prong of *Kachinski,* the offered job is "actually available" only if it can be performed by the claimant, taking into consideration his physical limitations and restrictions, age, intellectual capacity, education, previous work experience and other relevant consid-

erations. *Id.* at 251, 532 A.2d at 379. "Other relevant considerations have included non-medical factors such as the claimant's place of residence, the distance and duration of the claimant's commute, and the length of the workday. The *totality of the circumstances* approach should be used to determine whether a job is available and appropriate for a reasonable person in Claimant's position." *Blakeslee Aluminum, Inc. v. Workers' Compensation Appeal Board (Kotula )*, 740 A.2d 1213, 1216 (Pa.Cmwlth.1999) (emphasis added), *petition for allowance of appeal denied,* 563 Pa. 649, 758 A.2d 1202 (2000).

A review of the record reveals that Claimant shares his apartment, which consists of only 528 square feet, with his wife. The pictures submitted by Claimant indicate that the computer is not set up at a dedicated workspace or desk.[2] Rather, the computer is located on top of an entertainment center with numerous other items. Also, given that the computer is located in the bedroom, Claimant would not be able to perform his job if his wife would happen to be sick or bedridden again, as she was for several months beginning in March of 1994. Applying the totality of the circumstances approach set forth in *Blakeslee* to the relevant facts of this case, we find that because of the small size of Claimant's apartment, the placement of the computer on an entertainment center rather than a dedicated workspace and the location of the computer in the bedroom, it is not appropriate, as a matter of law, for Claimant to perform the offered job from his home. Therefore, because the offered work-at-home position was not "actually available" as required by *Kachinski,*

---

**2.** We note that the record does not indicate that Employer offered to set up a workstation · or computer desk in Claimant's apartment.

the WCJ erred by granting Employer's Modification Petition.[3]

Accordingly, the order of the Board is reversed.

### ORDER

AND NOW, May 23, 2001, the order of the Workers' Compensation Appeal Board docketed at A98–3043 and dated May 1, 2000 is hereby REVERSED.

---

**3.** Because we hold that the offered job was not actually available, we do not need to address the remaining issues raised by Claimant in his petition for review.