Viola MEDVED, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (ALBERT GALLATIN SERVICES), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2001.
Decided Nov. 28, 2001.
Reargument and or Reconsideration Denied Jan. 28, 2002.

Peter M. Suwak, Washington, for petitioner.

Harry W. Rosensteel. Pittsburgh, for respondent.

Before PELLEGRINI, Judge, LEADBETTER, (P.) Judge, and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Viola Medved (Claimant) petitions for review of the January 9, 2001 order of the Workers' Compensation Appeal Board (Board) that affirmed the order of the Workers' Compensation Judge (WCJ) granting the modification petition filed by Albert Gallatin Services (Employer). The primary issue before us on appeal is whether the Board erred in determining that Employer met its burden of establishing that a position was available to Claimant under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), where Claimant would have to perform a telecommunications job from her home and a telephone company would have to install a dedicated telephone line. We affirm.

On March 10, 1986, Claimant suffered a work-related injury to her back in the course of her employment as a registered nurse. Pursuant to a July 2, 1986 notice of compensation payable, Claimant received total disability benefits in the weekly amount of $260.15, based on an average weekly wage of $390.26. On April 2, 1988, the parties executed a supplemental agreement indicating that Claimant's benefits were suspended as of November 1, 1986 due to her return to work on that date at no loss of earnings. On May 12, 1990, when Claimant sustained another loss of earnings, she filed a reinstatement petition. She later withdrew that petition, however, on August 27, 1990.

Employer filed a modification/suspension petition on October 14, 1997, alleging that Claimant was capable of sedentary to light-duty work as of August 27, 1997, that Employer had located appropriate work for her through a vocational expert and that Claimant had failed to make a good-faith effort to secure that work. In a responsive answer, Claimant denied all material allegations.

In support of its petition, Employer presented the testimony of Leonard Felman, the vocational expert, Stacey Marchione, president of Smart Telecommunications, and Dr. Betsy Blazek–O'Neill, a physician board-certified in physical medicine and rehabilitation. On the basis of Mr. Felman's testimony, the WCJ found as follows with regard to the customer service surveyor position:

> [T]he work involved would be telecommunications rather than telemarketing. . . . Telecommunicating, Mr. Felman stated, was considered low stress because it is business to business contact and not calling homes and trying to sell items. The job offered . . . would be calling businesses within business hours to confirm names and addresses for Dunn & Bradstreet and confirming the operation of bar code machines in businesses. The only exception to the business to business rule would be calls that are placed on behalf of the American Heart Fund asking individuals to send letters to their neighbors asking them to

contribute to the American Heart Fund. Mr. Felman testified that the claimant would be able to select some calling assignments that relate to topics in which she has an interest and would be able to vary her work schedule to accommodate any need she had to rest. Mr. Felman testified that the only time anyone would enter the claimant's home ... would be when the public telephone company, not Smart, would install a telephone line connection jack. A hands free portable telephone with a headset and lists and information would be sent to her home via UPS. The only monitoring performed by Smart would be to review the telephone bill for the separate line to verify that calls were placed for the telecommuting work. Mr. Felman testified that the claimant had contacted [the vocational rehabilitation company] twice by telephone and advised them that she had received their letters regarding this position with Smart. She stated she expected rent if she were to work at home but that she did not like telephone work and was declining the position.

(Finding of Fact "F.F." No. 6.)

In addition, Marchione, president of Smart, testified as follows regarding the position:

The position involved verifying business names and addresses with no sales. The Smart employee would work from home using a dedicated telephone line installed by the telephone company exclusively for their [sic] work. The only monitoring performed by Smart of the claimant's performance would be a review of the telephone bill for the dedicated telephone line.

(F.F.10.)

Finally, Employer's medical expert, Dr. Blazek O'Neill, determined that Claimant had degenerative disc disease and degenerative joint disease in her lumbar spine, due in part to her 1986 work injury. She opined that Claimant was capable of sedentary and light forms of work. She reviewed the material regarding the proffered telecommunications position and opined that Claimant was capable of performing that type of work on a full-time basis as of the December 18, 1995 examination.

Claimant presented her testimony, that of her husband and that of two medical experts. Claimant testified that she was sixty-seven years old and received social security disability benefits. In addition, Claimant stated that she did not feel that she could do the job mentally or physically and that she was neither trained for nor wanted to do that kind of work.

Claimant's husband testified that

he did not want his wife to work out of their residence because he felt it was an invasion of his privacy. He was concerned that doing that kind of work in the couple's apartment would make the claimant nervous, upset and maybe unreasonable to get along with and would create a bad situation in their marriage. Mr. Medved stated that he was 68 years of age and had been married to his wife for 45 years and they had always gotten along well together. Mr. Medved stated that he continued to work seven days a week operating barber shops and beauty shops. Mr. Medved did indicate that he would have no objections to his wife working if the telecommunications work could be done out of a storeroom which he was willing to rent to the telecommunications company.

(F.F.5.)

Claimant's first medical expert, Dr. Nunziata Raschella, a family practice physician, indicated that Claimant had some legitimate low back pain, but made no

mention of Claimant's abilities to perform any type of work or any degree of her disability. Claimant also offered the report of Ronald E. Novak, D.C., a chiropractor, who found that Claimant would have periodic exacerbation of pain, numbness and stiffness in her left foot, leg, hip and in her spine.

Ultimately, the WCJ granted Employer's modification petition, effective August 27, 1997, and dismissed its suspension petition. The WCJ concluded that the proffered telecommunications job was within Claimant's work-related physical limitations and that she offered no valid reasons for refusing to accept it. With regard to any physical limitations, the WCJ stated that she did not find credible Claimant's testimony that she could not do the job mentally or physically, finding to the contrary that Claimant's "mental ability was quite good as she demonstrated in her testimony." (F.F.12.) Further, although the WCJ found no dispute between the deposition of Dr. Blazek–O'Neill and the reports of Claimant's medical experts, she determined that "[t]here is no dispute that the claimant has degenerative disease in her lumbar spine and that condition causes her pain and limits her working ability to sedentary or light duty work. Clearly the job of working in telecommunications from her home falls within that level of work." (F.F.12.)

Moreover, the WCJ found Claimant's personal feelings about the proffered position to be irrelevant. The WCJ also rejected the concerns of Claimant and her husband regarding privacy, concluding that Mr. Felman and Ms. Marchione adequately addressed those concerns in their testimony.

The Board affirmed the WCJ's order, concluding that there was substantial, competent evidence to support the WCJ's finding that Claimant failed to present a valid reason for her failure to accept the proffered job. It reiterated the law that Claimant's personal feelings about the job were irrelevant[1] and that Mr. Felman and Ms. Marchione addressed Claimant's privacy concerns. In addition, pointing out that it is within the province of the WCJ to accept or reject the testimony of any witness,[2] the Board noted that the WCJ rejected Claimant's testimony that she was not mentally or physically capable of performing the job.

Finally, the Board rejected Claimant's contention that Smart's failure to pay rent for the use of the home constituted a sufficient reason for Claimant to refuse the job. It noted that Smart would have paid Claimant $9.00 per hour to make the phone calls from her home and that she also would have received partial disability benefits based on the difference between her current and pre-injury wages. *See Dilkus v. Workmen's Compensation Appeal Board (John F. Martin & Sons)*, 543 Pa. 392, 671 A.2d 1135 (1996) (bad faith where claimant refused job with relatively low wages based on concerns over the costs of transportation where claimant would receive partial disability benefits to account for the difference in wages and travelling expenses.) Claimant's timely petition for review to this Court ensued.

In *Bussa v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 777 A.2d 126 (Pa.Cmwlth.2001), a recent case where this Court determined that an at-home job was not actually available to a

---

1. *Hendry v. Workmen's Compensation Appeal Board (Miller & Norford, Inc.)*, 133 Pa. Cmwlth.28, 577 A.2d 933 (1990).

2. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995).

claimant, this Court reiterated the applicable law:

> Pursuant to *Kachinski,* the burden of proof is on the employer to show that the claimant's condition has changed and that the claimant has been referred to a then available job that he is capable of performing. The burden of proof then shifts to the claimant to demonstrate that he responded to the job offer in good faith. If the claimant does not exercise good faith, then his benefits can be modified.

*Id.* at 130 (citations omitted).

As for analyzing whether a job is actually available to a claimant, the Court in *Bussa* stated as follows:

> Under the second prong of *Kachinski,* the offered job is "actually available" only if it can be performed by the claimant, taking into consideration his physical limitations and restrictions, age, intellectual capacity, education, previous work experience and other relevant considerations. "Other relevant considerations have included non-medical factors such as the claimant's place of residence, the distance and duration of the claimant's commute, and the length of the workday. The *totality of the circumstances* approach should be used to determine whether a job is available and appropriate for a reasonable person in Claimant's position."

*Id.* (citations omitted).

In the present case, Claimant argues that the Board erred in determining that she had no valid reasons for refusing the telecommunications job, citing the potential employer's refusal to pay rent and the inconvenience to the household. She points out that Smart would have the benefit of not having to provide a normal workplace while at the same time requiring the use of home space for the job. Further, there would be a disruption and change of the home environment for the husband who would not otherwise be compensated. For example, he would be forced to hear her part of any conversations required by the job whereas in a normal job with an off-site workspace, no such intrusion of privacy would occur.

Moreover, Claimant rejects the Board's conclusion that the testimony of Mr. Felman and Ms. Marchione adequately addressed the invasion of privacy concern. Claimant points out that, had she accepted the job, she would have been required to sign an agreement indicating that Smart would have reasonable and timely access to her home during business hours for purposes of installation or service of equipment and training or removal of equipment. That agreement further reserved to Smart the right to monitor usage of the equipment and services provided at the residence. (R.R. 114–115a.) Thus, Claimant argues that the agreement required much more than the one installation visit Mr. Felman implied would be necessary.

Further, Claimant maintains that, even accepting all of the modifications offered to reduce the intrusion into her residence, the offered job would still require several intrusions. At a minimum, these intrusions would include the permanent placement of equipment in her home and the repeated daily conversion of a portion of her home into commercial office use. She argues that, under established Pennsylvania law, no one has the right to force a conversion of the use of one's private residence and that an owner has the right to the quiet enjoyment of his personal property. *See Houston v. Texaco, Inc.,* 371 Pa.Super. 399, 538 A.2d 502 (1988) (law recognizes cause of action for inconvenience and discomfort caused by interference with another's peaceful possession of his real estate.)

In addition, Claimant rejects the Board's indirect reliance on *Dilkus* for the proposition that partial disability benefits could, in part, make up for the conversion of part of her home into a home office. She points out that the Court in *Dilkus* concluded that partial disability benefits could make up for the expenses associated with transportation to a job. It did not address the forced conversion of a portion of a claimant's own real estate.

Further, Claimant avers that an analysis of the proffered position indicates that it was not offered in good faith, but instead was an attempt to avoid paying compensation. She maintains that courts have gone so far as to approve mere "make-work" positions, but have never before held that a claimant must surrender the quiet enjoyment of his home without any form of compensation. She alleges that such a ruling would be contrary to the humanitarian purposes of the workers' compensation law. *Sell v. Workers' Compensation Appeal Board (LNP Eng'g)*, 565 Pa. 114, 771 A.2d 1246 (2001). She asserts that, at a minimum, *bona fide* job offers should require potential employers to provide an appropriate location for the proffered employment and that a bright-line should be drawn at the doorstep of the injured worker's home.

Finally, Claimant contends that the Board erred in finding that the job was within her mental and physical capabilities where her testimony and that of her doctors indicated that she suffers from continuing pain and discomfort. She points out that the WCJ found that there was no dispute between the parties' medical experts as to the lumbar disc degeneration diagnosis and that such a diagnosis should have precluded even sedentary work. Further, she alleges that the WCJ never addressed the issue of whether Claimant's claims of problems with her concentration had any merit. Claimant asserts that the WCJ's observation of her should not constitute a basis for disregarding her testimony regarding her mental endurance.

In response, Employer contends that the Board correctly determined that it met its burden of establishing that the telecommunications job was available to Claimant and within her physical capabilities. Employer acknowledges this Court's recent case of *Bussa*, where we found that an at-home job was not available to the claimant, but maintains that the factors in that case distinguish it from the present one.

In *Bussa*, the Board affirmed the order of the WCJ granting the employer's modification petition based on the claimant's lack of good faith in rejecting a job offer that would have required him to work at home from his own computer. This Court reversed the Board's order, concluding that the job was not actually available to the claimant. Relevant factors included the fact that the computer was located in an awkward position on top of an entertainment center in the bedroom and there was no other place in the apartment where it could be relocated. In addition, there was evidence that the claimant's wife had been sick and bedridden for several months.

Employer maintains that the Court in *Bussa* correctly considered the totality of circumstances in determining whether the job was actually available to the claimant. It further alleges, however, that even though a consideration of the totality of circumstances in *Bussa* led the Court to conclude that the at-home job was not available, the Court should reach the opposite result in the case before us. Employer points out that the present case does not involve a computer that must be located, but instead a hands-free portable telephone with a headset. Claimant would be free to move about, stand or sit wherever

she was comfortable to do the work. In addition, Claimant's husband is mobile and involved in tending his businesses. Thus, Employer contends that the present case is distinguishable from *Bussa*.

Further, Employer rejects Claimant's contention that the telecommunications position is not a valid job merely because it must be performed from her home. Employer notes the growing number of Americans telecommuting on a daily basis. In addition, it points out that a "normal workplace" is not required for all legitimate employment.

Employer also rejects Claimant's argument that working from her home would violate her constitutional rights. It maintains that performing the telecommunications position from home would not constitute an enforced conversion of real estate because only a job is at issue, one that she is free to accept or reject. Similarly, it avers that the fact that a rejection would result in a decrease in workers' compensation benefits does not transform this matter into a constitutional case.

Further, Employer rejects Claimant's argument that the Board erred in finding that she was mentally and physically capable of doing the job. It points out that the WCJ found the testimony of Dr. Blazek O'Neill in that regard to be credible. It notes that the testimony of a single medical expert may constitute a reasonable basis upon which a WCJ may arrive at a finding of fact, despite conflicting evidence. *Robertshaw Controls Co. v. Workers' Compensation Appeal Board (Raffensperger)*, 710 A.2d 1232 (Pa.Cmwlth.1998).

In addition, Employer notes that neither of Claimant's medical experts even testified concerning Claimant's ability to perform any type of work in general or the telecommunications job in particular. Certainly, the WCJ was free to reject Claimant's testimony that she was mentally and

physically incapable of doing the job. *See Walk v. Workmen's Compensation Appeal Board (U.S.Air, Inc.)*, 659 A.2d 645 (Pa. Cmwlth.1995) (a claimant's subjective belief did not relieve her of the obligation to pursue a job referral in good faith.)

Also with regard to medical condition, Employer rejects Claimant's argument that it had to demonstrate an actual change in medical condition before she was deemed fit for any employment. Employer points out that this Court dismissed that argument in *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Cmwlth.479, 568 A.2d 981 (1989).

Finally, Employer reiterates the law that a claimant's personal dislike for a position is irrelevant to a determination as to whether the job is actually available. *Hendry*. It points out that Claimant testified that she expressed to Mr. Felman that she did not like telemarketing and that she really did not care for telephone work. (December 12, 1997 Hearing, N.T. 9; R.R. 9a; February 27, 1998 Hearing, N.T. 11; R.R. 27a.) It notes Claimant's letter to the WCJ where she stated that she has never been a phone person, that such work makes her "nervous and depressed when people yell at me, call me names or hang up on me" and that her "past experience with tele-marketing [sic] people has always been disturbing." (Claimant's Exhibit 4; R.R. 116a.) Further, Claimant stated in that letter that she has "been a registered nurse all of my life because it is my chosen profession to help people not to lie to them, so as I'm sure you can see this would be in direct violation of all that I believe in." (*Id.*)

We have carefully considered the parties' arguments and agree with the Board that Claimant demonstrated a lack of good faith in failing to pursue the telecommuni-

cations position. In making this determination, we note that *Bussa* does not stand for the proposition that an at-home job can never be available to a claimant. As Employer notes, the totality of circumstances must be considered in ascertaining whether an at-home position is available to a specific claimant. In the present case, factors that could be considered "other relevant considerations" indicate that the telecommunications job was actually available to Claimant. Unlike *Bussa*, there were no factors present in the case before us that would have prevented Claimant from performing the position from her home.

Accordingly, we affirm.

### ORDER

AND NOW, this 28th day of November, 2001, the January 9, 2001 order of the Workers' Compensation Appeal Board is hereby affirmed.

PELLEGRINI Judge, Dissenting.

I respectfully dissent because I disagree with the majority's holding that a position offered as a telephone customer surveyor performing work from home is suitable alternative employment under the standards set forth in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).[1] I recognize that a significant number of individuals work from their homes, but just because they choose to do so does not make at-home work suitable alternative employment. A significant number of individuals choose to commute great distances and work inordinate numbers of hours, but if proffered, we would not find this type of employment situation to be a suitable alternative. Unless a person had chosen to work at home prior to an injury, I would hold that any position that requires a claimant's residence to be commandeered and turned from a home into an employer's rent-free field office, thereby invading the claimant's privacy, intruding, without permission, into other household members' daily home lives and disrupting family life, can never be considered suitable alternative employment.

Accordingly, I respectfully dissent.

---

1. Pursuant to *Kachinski,* the burden of proof is on the employer to show that the claimant's condition has changed and that the claimant has been referred to a then-available job that he or she is capable of performing. The burden of proof then shifts to the claimant to demonstrate that he or she responded to the job offer in good faith. If the claimant does not exercise good faith, then his or her benefits can be modified. *Id.* at 252, 532 A.2d at 379.

    Under the second prong of *Kachinski,* the offered job is "actually available" only if it can be performed by the claimant, taking into consideration his or her physical limitations and restrictions, age, intellectual capacity, education, previous work experience and other relevant considerations. *Id.* at 251, 532 A.2d at 379. "Other relevant considerations have included non-medical factors such as the claimant's place of residence, the distance and duration of the claimant's commute, and the length of the workday."