# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Naomi DiBlassio,              :
            Petitioner      :
                                   :
          v.                :    No. 296 C.D. 2021
                                   :    Submitted: May 27, 2022
Therapeutic Center at Fox      :
Chase Villa at Bridge (Workers'   :
Compensation Appeal Board),    :
            Respondent    :

BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                 **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                 **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: August 7, 2023**

Naomi DiBlassio (Claimant) petitions for review of the February 17, 2021 Opinion and Order of the Workers' Compensation Appeal Board (Board) that affirmed the February 26, 2020 Decision and Order of the Workers' Compensation Judge (WCJ) granting the Modification Petition filed by Therapeutic Center at Fox Chase Villa at Bridge (Employer). The WCJ concluded Employer had established that Claimant did not attempt a job within her capabilities in good faith as of December 5, 2018, and modified Claimant's temporary total disability benefits as of that date. On appeal, Claimant questions whether the Board's affirmance of the WCJ's Decision was based upon substantial, competent evidence under *Kachinski v. Workmen's Compensation Appeal Board* (*Vepco Construction Co.*), 532 A.2d 374

(Pa. 1987), and the Act of June 24, 1996, P.L. 350, No. 57 (Act 57 of 1996), which substantially amended the Workers' Compensation Act (Act).[1] Specifically, Claimant argues Employer's vocational testimony did not consider all of the necessary vocational factors and was not offered within a reasonable degree of vocational certainty. Upon review, we affirm the Board's Order.

## I.    BACKGROUND

On March 2, 2015, while employed as a school psychologist, Claimant slipped at work and suffered a "trunk, low back area sprain," which Employer accepted by issuing a Notice of Temporary Compensation Payable, setting a compensation rate of $471.40, based on a pre-injury average weekly wage of $523.77. (WCJ Decision, Finding of Fact (FOF) ¶¶ 1, 6(a).) On April 27, 2018, Christopher Wagener, M.D., a board-certified orthopedic surgeon, conducted an independent medical examination (IME) of Claimant and, based on his examination and review of Claimant's medical records, concluded Claimant was able to return to work at a full-time sedentary position. (*Id.* ¶ 2(a), (f).) Employer issued a Notice of Ability to Return to Work on June 19, 2018. (Ex. D-Wallace-4, Certified Record (C.R.) Item 18.) On February 6, 2019, Employer filed a Modification Petition requesting that Claimant's benefits be modified to partial disability. (Modification Petition, C.R. Item 2.) Therein, Employer alleged that Claimant had been offered a job within her physical capabilities, but she declined the position without adequate reason, and as a result, her benefits should be modified to partial disability. (*Id.*) Claimant filed her Answer to Employer's Modification Petition on February 21, 2019, wherein she denied that she had refused a job within her physical capabilities. (Answer, C.R.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1-1041.4, 2501-2710.

Item 4.)  The matter was assigned to the WCJ, who held hearings on the Modification Petition.

> ### A.    Employer's Evidence

Employer presented the deposition testimony of Dr. Wagener; Renee L. Wallace, vice president of vocational services Catalyst RTW (Catalyst), which is a home-based return-to-work program; and Kathleen Berg, a talent and employment specialist with Solomon Group (Solomon), a management consulting company.

Dr. Wagener testified that at the April 27, 2018 IME, Claimant told Dr. Wagener she slipped but did not fall to the ground and hurt her hip and low back.[2] (Reproduced Record (R.R.) at 114a; FOF ¶ 2(a).)  Claimant complained of pain to the left thigh, groin, and knee, numbness and tingling down to the foot, and low back pain.  (R.R. at 115a-16a; FOF ¶ 2(b).)  Dr. Wagener physically examined Claimant and reviewed her medical records, including those generated immediately after the incident, objective study results, reports pertaining to spinal injections, physical therapy notes, and notes regarding a spinal cord stimulator that Claimant had implanted.  (R.R. at 118a-22a; FOF ¶ 2(c)-(d).)  Dr. Wagener opined Claimant had reached maximum medical improvement and determined that Claimant could return to full-time employment in a sedentary-duty capacity.  (R.R. at 123a-24a; FOF ¶ 2(e)-(f).)  Based on his IME and review of Claimant's medical records, Dr. Wagener found that Claimant could perform the market research associate position she was offered, as it was a sedentary-duty position and would allow her to take frequent breaks.  (R.R. at 127a-36a; FOF ¶ 2(f).)

---

[2] Dr. Wagener's deposition testimony is summarized by the WCJ in finding of fact 2.  A copy of the deposition transcript can be found in the Reproduced Record at pages 105a through 196a.

Ms. Wallace testified[3] she had worked at Catalyst since November 2003 and was certified by the Department of Labor and Industry (Department) to perform labor market surveys and vocational assessments. (FOF ¶ 3(a); R.R. at 8a-9a; Ex. D-Wallace-2, C.R. Item 18.) Claimant was referred for a vocational assessment after Dr. Wagener released her to return to work at sedentary duty. (FOF ¶ 3(a).) Ms. Wallace was asked to complete the vocational assessment with Claimant and proceed with a placement through Catalyst's home-based return-to-work program. (R.R. at 10a.) To aid her in her assessment, Ms. Wallace was provided Dr. Wagener's report following his IME indicating Claimant was released to full-time sedentary work along with a copy of the Notice of Ability to Return to Work sent to Claimant. (*Id.* at 10a-12a.) On October 15, 2018, Ms. Wallace interviewed Claimant by conference call with her counsel present. (*Id.* at 13a.) During the interview, Ms. Wallace learned Claimant had a bachelor's degree in education and a master's degree in counseling psychology. (*Id.* at 13a.) Ms. Wallace also learned Claimant worked as a school psychologist for nine years, and she and Claimant discussed Claimant's day-to-day activities and physical restrictions. (*Id.* at 13a, 27a.)

Based on the vocational interview, Ms. Wallace determined Claimant was a good candidate for an entry-level, home-based market research associate position with Solomon, which offers market research using telephone surveys. (*Id.* at 13a-14a; FOF ¶ 3(c).) The position was a funded employment position, meaning the first 400-750 hours of employment would be subsidized by Employer, although Solomon would be the employer of record. (Ex. D-Wallace-5, C.R. Item 18.) Claimant would be provided everything necessary to do the job, including a script and a cordless headset, which would enable Claimant to work from anywhere in her home she felt

---

[3] Ms. Wallace's deposition testimony is summarized by the WCJ in finding of fact 3. A copy of the deposition transcript can be found in the Reproduced Record at pages 3a through 42a.

comfortable. (R.R. at 16a-17a.) The job was offered for 40 hours per week, but Claimant was informed by letter that part-time work was available to her. (*Id.* at 18a, 29a.) The position is below sedentary in nature with lifting limited to two pounds or less, offers flex time, and requires no prior experience. (*Id.* at 18a; FOF ¶ 3(c).) Although Claimant had no experience in doing market research by telephone, Ms. Wallace explained Solomon provides training, including role play, and someone like Claimant who counsels people "should really have no problem connecting with people on the phone and then obtaining the information through the survey." (R.R. at 19a.) Ms. Wallace determined Claimant, who has an advanced educational degree and communicates very well, is qualified for the position. (*Id.* at 19a-20a; FOF ¶ 3(c).) Ms. Wallace and Claimant spoke about Claimant's physical restrictions, but because of the flexibility of the position, Ms. Wallace did not see any issues in Claimant being able to physically perform the job duties. (R.R. at 20a, 27a.) Claimant did not express any concern about being unable to perform the job from a vocational standpoint. (*Id.* at 20a.) On cross-examination, Ms. Wallace indicated that she did not record Claimant's birthdate when interviewing her but was aware that Claimant was 62 years old as her birthdate was included on the referral information. (*Id.* at 26a.) She also was aware of Claimant's neurostimulator implant. (*Id.* at 27a.)

Ms. Berg testified[4] she had been employed as a manager of market research associates and was responsible for interviewing, hiring, training, and coordinating their work, which involved calling businesses and asking questions/conducting surveys. (R.R. at 49a; FOF ¶ 4(a).) Catalyst referred Claimant to Solomon, and Ms. Wallace coordinated an interview between Ms. Berg and Claimant. (R.R. at 50a-

---

[4] Ms. Berg's deposition testimony is summarized by the WCJ in finding of fact 4. A copy of the deposition transcript can be found in the Reproduced Record at pages 43a through 104a.

52a.) Ms. Berg interviewed Claimant on December 4, 2018, and at the end of the interview, Ms. Berg offered Claimant a full-time position as a market research associate at a rate of $9.00 per hour for 40 hours per week, although Claimant could work less hours if needed. (*Id.* at 57a; FOF ¶ 4(b)-(c).) The position would require Claimant to conduct surveys at home anytime between 8:00 a.m. and 9:00 p.m., enabling Claimant to take long breaks if needed. (FOF ¶ 4(b).) Claimant would be able to sit at a desk or in a recliner, stand, or lie in bed in her home while she made the calls by using connectivity and a hands-free set up provided to her. (*Id.*; R.R. at 58a-59a, 64a-65a.) Market research associates with physical limitations, including back injuries, are among those whom Solomon employs. (R.R. at 65a.) Finding Claimant to be polite and well spoken, Ms. Berg felt she would be "a good fit." (*Id.* at 54a-55a.) Claimant told Ms. Berg "she wanted to think about it and said [it] was not her favorite thing to do[,]" and in a voicemail left for Ms. Berg the next day, Claimant declined the job offer, saying she "would not be able to fulfill the commi[]tment at this time." (R.R. at 65a, 67a; FOF ¶ 4(c)-(d).) The job remains available to Claimant. (R.R. at 68a.) Ms. Berg acknowledged Catalyst referred potential employees to Solomon before. (*Id.* at 69a.)

### B. Claimant's Evidence

Claimant testified[5] before the WCJ on her own behalf and presented the deposition testimony of Lynn Yang, M.D.

Claimant, who was 62 years old, testified that at the time of the work injury, she was 58 years old and working as a school psychologist for Employer. (R.R. at

___

[5] Claimant's testimony is summarized by the WCJ in finding of fact 6. A copy of the September 20, 2019 hearing transcript can be found in the Reproduced Record at pages 271a through 319a.

276a-77a.) She had planned to retire at 68. (*Id*. at 276a.) She previously was an educator and a clinical therapist before becoming an administrator of a K-2 program. (*Id*. at 277a.) Claimant described suffering the work injury after slipping on ice and falling to the ground. (*Id*. at 278a-79a; FOF ¶ 6(a).) Claimant continued to work part-time for Employer for approximately nine months after the injury until Employer closed the portion of the facility in which she worked in June 2016. She would have continued working for Employer if the facility had remained open. (R.R. at 292a-93a, 306a-07a, 313a; FOF ¶ 6(c).) This part-time work required Claimant to travel one hour each way. (FOF ¶ 6(c).) In the summer of 2017, after 2 years of feeling no improvement, Claimant had a nerve stimulator implanted in her back, which has improved Claimant's ability to sleep and her pain by as much as 40% at times, although it did not relieve her spasms. (R.R. at 283a, 285a-86a; FOF ¶ 6(b).)

In November 2018, Claimant participated in a vocational interview and was offered a market research associate position, which would require her to conduct telephone surveys for eight hours per day from home. (R.R. at 294a-95a, 304a; FOF ¶ 6(d).) Claimant indicated she wanted to consult with her physician before accepting the job offer because she did not believe she could perform its duties due to her work injury. (R.R. at 296a.) Claimant was told she needed to respond by the end of the next day. (*Id.*) Without having time to consult her doctor, Claimant declined the job offer because she did not feel she could physically perform the duties of a full-time job. (*Id*. at 297a-99a, 305a-06a, 311a; FOF ¶ 6(d)-(e).) Claimant's physical condition had not changed between the time she was offered the position and the hearing. (R.R. at 300a-01a, 310a.) She stated she could not stand for long periods of time and cannot lift things. (R.R. at 300a-01a; FOF ¶ 6(a).) She did not believe she could physically perform the proffered job due to her pain. (R.R.

7

at 311a.) When asked whether Claimant thought she could learn the job, she responded "I would think so." (*Id.* at 312a.)

Dr. Yang, who is board certified in physical medicine and rehabilitation, examined Claimant on one occasion, on February 22, 2019, at Claimant's counsel's request.[6] (*Id*. at 214a, 230a; FOF ¶ 5(a), (e).) At that time, Claimant reported she had slipped and fallen on her left leg in March 2015 and sustained injuries. (R.R. at 215a; FOF ¶ 5(a).) Claimant received treatment following the injury but continued to complain of pain and discomfort. (R.R. at 215a-18a*,* 221a; FOF ¶ 5(a)-(b).) Dr. Yang noted Claimant's physical examination was normal but for decreased sensation in her lateral left calf and a decreased range of motion. (R.R. at 238a-40a; FOF ¶ 5(c).) In Dr. Yang's opinion, although Claimant cannot return to "gainful employment," which Dr. Yang considers to be full-time, full-duty work, Dr. Yang would permit Claimant to attempt a position at reduced days or hours from home. (R.R. at 224a-25a, 228a, 246a; FOF ¶ 5(d).) Dr. Yang did not request a follow-up visit with Claimant, and Dr. Yang reviewed no objective studies as part of the physical examination. (R.R. at 230a-31a; FOF ¶ 5(e).)

### C. WCJ Decision

Following a review of the submitted deposition testimony, Claimant's live testimony, and the record evidence, the WCJ issued a Decision and Order on February 26, 2020. In addition to the findings summarized above, the WCJ made the following credibility determinations:

---

[6] Dr. Yang's deposition testimony is summarized by the WCJ in finding of fact 5. A copy of the deposition transcript can be found in the reproduced record at pages 204a through 270a.

7. The undersigned has carefully and thoroughly reviewed the testimony of Dr. Wagener and Dr. Yang and finds the opinions of Dr. Wagener more competent and credible than those of Dr. Yang. While both saw Claimant on one occasion, Dr. Yang had reviewed no objective studies and had no information about Claimant's activities of daily living. As such, being offered as Claimant's medical advocate, her testimony is significantly lacking.

8. The undersigned has carefully and thoroughly reviewed the testimony of Ms. Wallace and finds her opinions credible, consistent, and uncontested.

9. The undersigned has carefully and thoroughly reviewed the testimony of Ms. Berg and finds her opinions credible, consistent, and uncontested.

10. The undersigned has carefully and thoroughly reviewed Claimant's testimony and finds that testimony unpersuasive as to the reason she declined to attempt the job offer. The job did not require the two[-]hour car drive that she continued to perform after she was injured. The job offered did not require her to stand for long periods of time or to lift which were her reported limitations. She would have been able to attempt the job at home, select her work hours, and perform the job in any position comfortable to her. It is believed that she declined the job as told to Ms. Berg because it was not her favorite thing to do, which pursuant to the law is not a good faith reason to decline a modified job offer. Noted also is Claimant's different history of injury provided to Dr. Wagener and that to which she testified.

11. A suitable job offer was made to Claimant offering her a position effective December 5, 2018, earning $360.00 per week, resulting in partial disability benefits in the amount of $109.18.

(FOF ¶¶ 7-11.) In light of these findings, the WCJ granted Employer's Modification Petition upon concluding that "Employer ha[d] met its burden [of] prov[ing] that Claimant failed to attempt in good faith a job offered to her within her capabilities as of December 5, 2018[,]" which would result in temporary partial disability indemnity payments of $109.18. (WCJ Decision, Conclusion of Law (COL) ¶ 2.)

9

D.    *Board Opinion and Order*

Claimant filed a timely appeal with the Board on March 16, 2020. Before the Board, Claimant asserted the same arguments as she does presently. Claimant posited that Ms. Wallace had failed to testify within a reasonable degree of vocational certainty or to consider Claimant's age, work experience, and chronic pain when determining whether the job, which offered no phase in period, was appropriate for Claimant. Claimant also argued the WCJ improperly shifted the burden of proof to her when Employer had not met its burden. (Board Opinion (Op.) at 2.) After summarizing the evidence presented, the Board disagreed and issued its Opinion and Order affirming the WCJ's Decision. The Board stated that "Claimant's attack on appeal focuse[d] on the purported infirmity of [Employer]'s vocational witness, Ms. Wallace. However, her testimony was certain and there is no indication that she failed to testify within her expertise." (*Id.* at 8.) Despite Claimant's arguments to the contrary, the Board found Ms. Wallace's testimony regarding the propriety of the proffered position reflected her expertise, consideration of Claimant's age, work experience and background, and an awareness of Claimant's chronic pain and physical restrictions. (*Id.*) The Board added that Claimant did not testify she was vocationally unable to perform the required duties of the position. (*Id.* at 8-9.) The Board concluded, "Claimant's arguments, while phrased as substantive challenges, are simply an attack on the WCJ's decision to accept [Employer]'s evidence and reject her evidence." (*Id.* at 9.) Affording the WCJ's credibility determinations the required substantial deference and finding no reversible error, the Board affirmed the WCJ's Decision. (*Id.*) Claimant now petitions for review of the Board's Order.

## II.    ARGUMENTS

### A.    Claimant

On appeal,[7] although critical of the WCJ's findings, Claimant does not challenge the WCJ's credibility determinations or finding that Claimant is able to work 40 hours per week, which Claimant acknowledges, were within the WCJ's province to make. (Claimant's Br. at 24.) Instead, Claimant states her appeal centers on a challenge to the WCJ's second conclusion of law wherein the WCJ found "Employer has met its burden to prove that Claimant failed to attempt in good faith a job offered to her within her capabilities as of December 5, 2018 . . . ." (Claimant's Br. at 15 (citing COL ¶ 2).) Claimant contends the vocational witness's testimony had not been stated to a reasonable degree of vocational certainty, rendering it insufficient as expert testimony. (Claimant's Br. at 29.)[8]

The crux of Claimant's argument is the failure of the vocational witness, Ms. Wallace, to consider what Claimant refers to as the "*Kachinski*" and/or "Act 57 [ of 1996] criteria." According to Claimant, Ms. Wallace, who was asked whether she "personally" felt the proffered position fit within the sedentary restrictions imposed by Dr. Wagener, failed to opine as to the "hallmarks" typical of vocational testimony including, *inter alia*, how Claimant's age, chronic pain or breakthrough pain, or her

---

[7] This Court's scope of review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

[8] Claimant also argues Ms. Wallace's objectivity is questionable because Catalyst and Solomon enjoy a "strategic alliance" as "vocational agency and the funded employer," which is allegedly stated on the latter's website. (Claimant's Br. at 36-37; Claimant's Reply Br. at 13.) However, funded employment positions are not uncommon. *See, e.g.*, *Gen. Elec. Co. v. Workers' Comp. Appeal Bd. (Myers)*, 849 A.2d 1166 (Pa. 2004); *Sladisky v. Workers' Comp. Appeal Bd. (Allegheny Ludlum Corp.)*, 44 A.3d 98, 100 (Pa. Cmwlth. 2012). Moreover, at most, this relationship goes not to whether Ms. Wallace is qualified to testify but to her credibility or the weight to be given to her testimony. Here, the WCJ credited her testimony. (FOF ¶ 8.)

vocational preference may affect her ability to perform full-time work, and, instead, testified as a layperson who simply accepted a medical expert's opinion. (*Id.* at 29-30, 40-41.) Stated another way, the WCJ seemed to accept that because Claimant can physically do the job, *i.e.*, it was within the sedentary- work restrictions imposed on Claimant by Dr. Wagener, Employer satisfied its initial burden, which is contrary to the law and redundant of the medical expert's role, in Claimant's view. (*Id.* at 29.) Furthermore, instead of focusing on the factors necessary for Employer to meet its burden, Claimant contends the WCJ improperly and prematurely shifted the burden to Claimant by focusing on whether she turned down the job offer in good faith. (*Id.* at 31-32.)

Claimant argues Employer failed to make its job referral in good faith because it did not consider Claimant's age, lack of experience in the field, and other relevant factors. Had these factors been considered, according to Claimant, it would have been obvious that the proffered position is not vocationally suitable for someone of Claimant's age with her education and vocational experience. Claimant posits that just as it is not vocationally suitable to pay someone to sit in a cafeteria all day with no work, the position "is an intentional attempt to provide unpleasant work not reflective of [her] true vocational aptitude." (Claimant's Reply Br. at 3-4; *see also id.* at 12 ("referring persons near retirement age to utterly dissimilar work[] may not be vocationally appropriate")．) Claimant cites to this Court's decision in *Bussa v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 777 A.2d 126 (Pa. Cmwlth. 2001), as well as various nonprecedential decisions of the Board, for the proposition that if a job does not meet the second prong of the *Kachinski* test, and a determination is not made as to the suitability of the position, an error of law exists. (Claimant's Br. at 33-36.) Claimant asserts "[t]here is no appropriate reason why

12

[Employer] could not refer Claimant to a position for which she was vocationally suited by age, experience, and physical condition," namely, "higher paid jobs within her own professional background, such as part-time work reviewing [individualized education plans] or to a tutoring position of an elementary school child." (*Id.* at 37-38.) According to Claimant, "[t]he point was not to provide a vocationally-suitable position, but to invite a rejection from a school psychiatrist[9] with an advanced degree." (*Id.* at 38.)

Although Claimant believes the record is clear that Employer did not meet its burden, Claimant alternatively requests that should the Court determine the WCJ did not make sufficient findings of fact, the Court should vacate the underlying decision and remand for the WCJ to make additional findings and to apply the appropriate burdens of proof. (*Id.* at 39-42.) Also in the alternative, and "[i]n an exercise of caution," Claimant avers the record is devoid of substantial evidence to support the WCJ's findings. (*Id.* at 42.) Notably, Claimant continues: "The WCJ's findings, however, appear more incomplete and not addressing the determinations to be made under *Kachinski*/Act 57 [of 1996] in this case than they are infirm. They are accurate, but meager and not fully relevant to the expert opinion and burden of proof presently." (*Id.* at 42.)[10]

### B. Employer

In response, Employer argues the record evidence established that Claimant had been offered a sedentary-duty job that was both physically and vocationally

---

[9] The record reflects Claimant was a school psychologist.

[10] This Court has determined that "[a]n adequate explanation for a determination is provided when the WCJ outlines the evidence considered, states credible evidence relied upon, and establishes the reasons underlying the ultimate decision rendered." *Hughes v. Wawa, Inc. (Workers' Comp. Appeal Bd.)*, 271 A.3d 922, 936 (Pa. Cmwlth. 2021) (citation omitted).

appropriate, and she rejected the position in bad faith. (Employer's Br. at 15-17.) Employer points out that, in fact, Claimant herself never testified that her age would be a hinderance to her performance of the job duties, and she unequivocally stated she could learn to do the job. (*Id*. at 22-24.) Employer posits it is sufficient for an employer to produce medical evidence relative to a claimant's capabilities and vocational evidence as to the basic requirements of the job. The WCJ then must determine, based upon that evidence, if the claimant can perform the job in question, and if the WCJ does, the burden will shift to the claimant to show she followed through with the job referral in good faith. The failure to do so will result in the modification of benefits to partial disability. (*Id.* at 19 (citing *Schneider, Inc. v. Workers' Comp. Appeal Bd. (Bey)*, 747 A.2d 845, 847-48 (Pa. 2000)).) Employer stresses that Claimant admits she is not challenging Dr. Wagener's medical opinion that Claimant is capable of working full time in a sedentary-duty position but, rather, takes issue with Ms. Wallace's vocational assessment. (Employer's Br. at 20 (citing Claimant's Br. at 24).) Employer states that Ms. Wallace, testifying in her professional capacity, described her vocational interview of Claimant which occurred in the presence of Claimant's counsel. Employer observes that Ms. Wallace testified she made her assessment aware of Claimant's age and physical limitations, as well as Claimant's professional background. (*Id*. at 20-24.) According to Employer, Claimant's arguments on appeal are also belied by Ms. Berg's testimony, which the WCJ found to be credible, that Claimant declined the job offer because it would not be her "favorite thing to do." (*Id*. at 25.)

Employer posits the WCJ properly considered the totality of the circumstances in determining the propriety of the position, and none of the cases to which Claimant cites in her brief show otherwise. (*Id*. at 24-26.) Employer adds

14

there is nothing suspect about the funded employment position Claimant was offered and that Claimant's suggestion she should have been offered a job in her field of study would impose an additional burden on employers that "they must tailor an offered position to be neither too vocationally strenuous *nor too little*," meaning the only appropriate position to offer Claimant, at least in Claimant's view, is one requiring her level of experience and education, not an entry-level position. (Employer's Br. at 26-27 (emphasis in original).)

## III.    DISCUSSION

Preliminarily, the WCJ is the ultimate factfinder herein and "has exclusive province over questions of credibility and evidentiary weight." *A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (citation omitted). In making credibility determinations, the WCJ may accept or reject a witness's testimony "in whole or in part." *Id.* (citation omitted). Neither the Board nor a court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246, 1251 (Pa. 2001). Thus, this Court will uphold the WCJ's credibility determinations herein unless we find they are made "arbitrarily or capriciously[.]" *Pa. Uninsured Emps. Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa. Cmwlth. 2014) (citation omitted). Because the crucial inquiry pertains to whether the record evidence supports the WCJ's actual findings, it is irrelevant whether the record also contains evidence that would support findings contrary to those made by the WCJ. *Id.* Therefore, viewing the evidence in the light most favorable to the prevailing party and giving it the benefit of all inferences reasonably deduced therefrom, this Court examines the entire record to discern if it contains "evidence a reasonable person

15

might find sufficient to support the WCJ's findings. If the record contains such evidence, the findings must be upheld." *A & J Builders*, 78 A.3d at 1238-39.

A modification petition is appropriate where there has been a change in a claimant's medical condition or earning power. *See* Sections 306(b)(2)-(3) and 413(a) of the Act, 77 P.S. §§ 512(2)-(3), 772. Under Section 306(b)(2) of the Act, 77 P.S. § 512(2),[11] which was one of the substantive amendments to the Act under Act 57 of 1996, "an employer may seek modification of a claimant's benefits by either offering the claimant a specific job that it has available that [the claimant] is capable of performing or establishing earning power through expert opinion evidence." *Kleinhagan v. Workers' Comp. Appeal Bd. (KNIF Flexpak Corp.)*, 993 A.2d 1269, 1275 (Pa. Cmwlth. 2010) (internal quotation marks omitted).

---

[11] Section 306(b)(2) provides:

"Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the [Department of Labor and Industry (Department)], private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply. If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the [D]epartment through regulation. The vocational expert shall comply with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses.

77 P.S. § 512(2).

16

If modification is sought based on a specific job offer, the employer must show the offered job is within the claimant's physical capabilities and actually available. *H.M. Stauffer & Sons, Inc. v. Workmen's Comp. Appeal Bd. (Davis)*, 687 A.2d 869, 871 (Pa. Cmwlth. 1996). To determine whether an offered position is "actually available," this Court must consider whether

> it can be performed by the claimant, taking into consideration [the claimant's] physical limitations and restrictions, age, intellectual capacity, education, previous work experience and other relevant considerations. Other relevant considerations have included non-medical factors such as the claimant's place of residence, the distance and duration of the claimant's commute, and the length of the workday.

*Allegheny Power v. Workers' Comp. Appeal Bd. (Barry)*, 841 A.2d 614, 617 (Pa. Cmwlth. 2004) (citing *Kachinski*, 532 A.2d at 380) (internal quotation marks omitted). In this regard, an employer must prove the "existence of meaningful employment opportunities, and not the simple identification of jobs found in want ads or employment listings." *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 842-43 (Pa. 2013). Whether a job is available and appropriate must be considered based on the totality of the circumstances. *Bussa*, 777 A.2d at 130.

The employer bears the burden of proving the availability of suitable employment. *Presby Homes & Servs. v. Workers' Comp. Appeal Bd. (Quiah)*, 982 A.2d 1261, 1264 (Pa. Cmwlth. 2009). To meet this burden, an employer must demonstrate that the job offer will return the claimant to productive employment, and not simply avoid payment of compensation. *Kachinski*, 532 A.2d at 380. The burden of proof then shifts to the claimant to demonstrate that she made a good faith effort to work at the available job in order to avoid modification of benefits under the Act. *Dixon v. Workers' Comp. Appeal Bd. (Medrad, Inc.)*, 134 A.3d 518, 522

(Pa. Cmwlth. 2016). In this regard, "bad faith" connotes "merely the characterization of [a c]laimant's action for refusing to follow up on a job referral without a sufficient reason." *Johnson v. Workmen's Comp. Appeal Bd. (McCarter Transit, Inc)*, 650 A.2d 1178, 1180 (Pa. Cmwlth. 1994) (citing *Kachinski*, 532 A.2d at 380). With these principles in mind, we consider Claimant's issues presented on appeal.

We begin with Claimant's assertion that Ms. Wallace did not testify to a reasonable degree of vocational certainty. While vocational expert testimony is necessary to proceed with modification using an earning power assessment, it is not necessary to seek modification via a specific job offer. In fact, oftentimes employers' human resources departments or insurers' risk management departments refer claimants to particular job openings. *See, e.g., Heisey v. Workmen's Comp. Appeal Bd. (R.R. Donnelley & Sons Co.)*, 634 A.2d 782, 785 & n.2 (Pa. Cmwlth. 1993) (collecting cases in which different types of witnesses testified and the qualifications of the witnesses were not questioned). Here, it is undisputed that Ms. Wallace is certified by the Department to perform labor market surveys and vocational assessments, and as such, was qualified to testify as to whether the market research associate position was within Claimant's restrictions and capability. Moreover, the fact that Ms. Wallace did not specifically state her opinion was being given to a reasonable degree of vocational certainty does not render her opinion insufficient; an expert need not use the "magic words," so long as the expert's testimony, as a whole, is not equivocal. *PetSmart Inc. through Indemnity Ins. Co. of N. Am. v. Workers' Comp. Appeal Bd. (Sauter)*, 219 A.3d 703, 707 (Pa. Cmwlth. 2019). As discussed more fully below, Ms. Wallace's testimony as a whole supports her professional, expert opinion that Claimant was vocationally able to perform the

18

job requirements. Thus, the Court will not find that because Ms. Wallace's testimony lacks "the magic words" in this case, this omission is fatal to Employer's Modification Petition.

With regard to Claimant's assertion that the Board erred in affirming the WCJ's findings based on Ms. Wallace's insufficient vocational testimony, Ms. Wallace testified that, mindful of Dr. Wagener's IME and the sedentary restrictions he imposed therein, she conducted a vocational assessment of Claimant and sent an interview notification letter to Claimant's counsel scheduling an interview for a position with Solomon, which ultimately resulted in Ms. Berg offering Claimant an at-home, sedentary job. (R.R. at 15a-16a, 23a, 28a.) As such, Employer met its burden of proving that there is an open and available position, which falls within Claimant's physical limitations.

However, Claimant argues that Ms. Wallace's testimony was insufficient to show that Claimant was vocationally able to perform the job requirements. Claimant states that in her deposition testimony Ms. Wallace spoke regarding only her "personal" belief that Claimant was capable of performing the job duties and failed to consider certain "hallmarks" such as her age, educational background, and lack of experience in the field. (Claimant's Br. at 29-30.) However, a review of Ms. Wallace's deposition testimony in its entirety belies these assertions.

It is true that Ms. Wallace responded "[a]bsolutely" when questioned as to whether she "personally fe[lt] that this position fell within Dr. Wag[e]ner's sedentary restrictions." (R.R. at 18a.) Notwithstanding, the next question posed was "[a]nd then in terms of **vocational** appropriateness, what determination did you make whether or not this position would be vocationally appropriate for [Claimant]?" (*Id.* at 18a-19a (emphasis added).) Ms. Wallace stated she was confident that Claimant,

19

who has a master's degree in "counseling psychology" and who "communicates very well[,]" would have no difficulty connecting with people over the telephone and obtaining information through the survey, even though she had never done market research over the telephone before. (*Id*. at 19a.) Nevertheless, Solomon would provide her role-play training should she need it. (*Id*.) Moreover, despite Claimant's argument to the contrary, Ms. Wallace was aware that Claimant was nearly 62 years old, as Claimant's birthdate was provided with her referral information. (*Id.* at 26a.) Furthermore, the two spoke about Claimant's neurostimulator implant and her physical restrictions, all of which Ms. Wallace indicated could be accommodated. (*Id.* at 27a.) Ms. Wallace stated her questions in this regard were not "based on Dr. Wag[e]ner's IME report." (*Id.* at 28a.) Significantly, at no time during the interview did Claimant express a concern that she could not vocationally perform the job duties. (*Id.* at 20a.) Conversely, when asked if she could do the work from a "training or educational perspective," Claimant did not hesitate to admit that she could do the work if she were pain free, and when further questioned if she believed she could "learn and figure out how to do the job[,]" Claimant responded, "I would think so." (*Id.* at 312a.)[12]

In light of the foregoing testimony, Claimant's reliance upon *Bussa* is misplaced. In *Bussa*, this Court held that an at-home job was not actually available to the claimant, and, therefore, the claimant did not act in bad faith when refusing it. 777 A.2d at 130. The claimant, who had never attempted to work from his home, explained that he lived in a 528-square foot apartment, which did not provide him with an appropriate place for his computer other than in his bedroom, where he could not arrange an ergonomic workstation. *Id*. at 129. Also, the claimant's wife was

---

[12] This testimony also serves as substantial evidence to support the WCJ's findings. Thus, the Court rejects Claimant's alternative argument on this basis.

"sick and bedridden" for several months, which further made him question his ability to work remotely at his home. *Id.* In holding the position was not "actually available" under *Kachinski*, the Court considered the totality of the circumstances and reasoned "because of the small size of [the c]laimant's apartment, the placement of the computer on an entertainment center rather than a dedicated workspace[,] and the location of the computer in the bedroom, it is not appropriate, as a matter of law, for [the c]laimant to perform the offered job from his home." *Id.* at 130.

Unlike the situation presented in *Bussa*, Ms. Wallace explained that Claimant could perform the duties of the position from anywhere in her home with materials provided to her, and Ms. Berg bolstered this testimony, going so far as to say one could make the calls in bed. Cognizant of Claimant's physical restrictions and age, Ms. Berg also explained that Claimant had a 13-hour window in which to complete her calls in a given day. The flexibility in both time and location and the support Solomon would provide to Claimant as she became accustomed to the new work requirements evince Employer's attempt to return Claimant to productive employment, not an effort to avoid payment of compensation. *Kachinski*, 532 A.2d at 379-80.

By her own admission, Claimant can perform the work vocationally, for the only concern to which she testified before the WCJ was whether she would be limited by the pain of her injury. While Claimant did not specify her reasons for turning down Ms. Berg's employment offer in her voicemail message, she did tell Ms. Berg market research work was "not her favorite thing to do," which the WCJ credited. (FOF ¶ 4(c)-(d).) Although Claimant may believe the job offer was not in good faith as it was not in Claimant's employment field or did not consider her vocational aptitude, this Court has rejected similar arguments in the past. For

21

instance, in *Crisman v. Workers' Compensation Appeal Board (Cytemp Specialty Steel)*, 740 A.2d 767, 769 (Pa. Cmwlth. 1999), an en banc panel of this Court rejected a claimant's argument that because a job was "demeaning" or "no-duty," the claimant's refusal was in good faith. In *Crisman*, the claimant was a mill hand and was offered a "fire watch" position, which involved sitting in a trailer reporting the possibility of fires. *Id.* at 768 n.1. Although the issue in *Crisman* was whether the claimant's rejection of the position was in good faith, its reasoning is instructive in considering whether an employer's offering of a position that a claimant views as "demeaning" was in good faith. In addition, in *Hendry v. Workmen's Compensation Appeal Board (Miller & Norford, Inc.)*, 577 A.2d 933, 935 (Pa. Cmwlth. 1990), this Court rejected a claimant's argument that a job referral had to be in the same industry or of the same status in order to be suitable. There, the claimant, a construction foreman, was referred to minimum wage, unskilled or semi-skilled positions, such as attendant and clerk positions, which he felt were degrading. *Id.* at 934. We explained:

> The rationale behind *Kachinski* was to ensure that job referrals were real, in other words, available, and that the person was capable of performing those functions. Merely stating that minimum wage jobs are degrading and result in a loss of self-esteem was never intended by the Supreme Court in *Kachinski* to allow a claimant to refuse alternative employment.

*Id.* at 935. *See also Tipton v. Workers' Comp. Appeal Bd. (Pleasant Twp.)* (Pa. Cmwlth., No. 741 C.D. 2015, filed Jan. 5, 2016), slip op. at 10 (rejecting argument that a job offer must be in the same industry in which the claimant was engaged or

22

in which the claimant obtained a degree);[13] *Yezovich v. Workmen's Comp. Appeal Bd. (USX Corp.)*, 601 A.2d 1341, 1344 (Pa. Cmwlth. 1992) (holding *Kachinski* does not support the claimant's argument that job referrals must be related to the claimant's interests or aptitudes); *M & D Auto Body v. Workmen's Comp. Appeal Bd. (Pallott)*, 599 A.2d 1016, 1020-21 (Pa. Cmwlth. 1991) (holding the claimant did not act in good faith when he did not follow through with a car sales position because he thought the position was degrading and car salespeople were deceitful).

## IV. CONCLUSION

As the ultimate factfinder, the WCJ determined Ms. Wallace had credibly testified that the market research associate position is both physically and vocationally appropriate for Claimant. The WCJ also found Ms. Berg's explanation that Claimant turned down the position because it was not of interest to her to be credible, and, therefore, Employer had met its burden to prove that Claimant did not attempt in good faith the position offered to her as of December 5, 2018. Because the record evidence supports the WCJ's findings, we hold that these findings were not made arbitrarily and capriciously, and the WCJ did not err in granting Employer's Modification Petition. Accordingly, the Order of the Board is affirmed.

**RENÉE COHN JUBELIRER**, President Judge

---

[13] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Naomi DiBlassio,                 :
           Petitioner        :
                                :
          v.                :    No. 296 C.D. 2021
                                :
Therapeutic Center at Fox        :
Chase Villa at Bridge (Workers'    :
Compensation Appeal Board),      :
           Respondent     :

## O R D E R

**NOW**, August 7, 2023, the February 17, 2021 Decision and Order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
**RENÉE COHN JUBELIRER,** President Judge